IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

RECEIVED JUN 29 2012 CLERK U.S. DISTRICT COURT SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO. 4:12-CR-085 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | INDICTMENT |
| | ) | |
| DONALD DEAN JENSEN, and | ) | T. 18 U.S.C. Section 1590(a) |
| ABELARDO RAMIREZ JUAREZ, | ) | T. 18 U.S.C. Section 1589(a) |
| also known as, Abel, | ) | T. 8 U.S.C. Section 1324(a)(2)(B)(iii) |
| | ) | T. 18 U.S.C. Section 2 |
| Defendants. | ) | |

**THE GRAND JURY CHARGES:**

**COUNT ONE**
**(Conspiracy to Commit Forced Labor)**

On or about and between March 1, 2010 and October 17, 2011, in the Southern District of Iowa and elsewhere, the defendants, DONALD DEAN JENSEN and ABELARDO RAMIREZ JUAREZ, also known as, Abel, together with others, did knowingly and intentionally conspire to obtain the labor and services of ACJ and RJ, persons whose identities are known to the Grand Jury, in violation of Title 18, United States Code, Section 1589,

    a)      by means of force, threats of force, physical restraint, or threats of physical restraint, against those persons;

    b)      by means of serious harm or threats of serious harm to those persons;

    c)      by means of the abuse or threatened abuse of law or legal process; and

    d)      by means of any scheme, plan, or pattern intended to cause those persons to believe that, if those persons did not perform such labor or services, those persons would suffer serious harm or physical restraint.

## INTRODUCTION

1. At all times material hereto, Defendant, DONALD DEAN JENSEN, was an approximately 55 to 56 year old male whose primary residence was 2***4 580th Avenue, Nevada, Iowa.

2. At all times material hereto, Defendant, ABELARDO RAMIREZ JUAREZ, was an approximately 51 to 53 year old male who resided in and about Brownsville, Texas.

3. At all times material hereto, ACJ was an approximately 38 to 39 year old female who was a citizen and national of Mexico, whose identity is known to the grand jury.

4. At all times material hereto, RJ was an approximately 35 to 36 year old female who was a citizen and national of Mexico, whose identity is known to the grand jury.

## MANNER AND MEANS

1. During and furtherance of the conspiracy, Defendant, RAMIREZ, in agreement with Defendant, JENSEN, recruited by false representation ACJ and RJ, by offering them employment and the opportunity to lawfully reside in the United States.

2. During and furtherance of the conspiracy, Defendant, JENSEN, paid Defendant, RAMIREZ, to smuggle ACJ and RJ across the Mexican border into the United States.

3. During and furtherance of the conspiracy, Defendant, JENSEN, an English speaker, utilized Defendant, RAMIREZ, who speaks both Spanish and English, to translate threats and instructions to ACJ and RJ, Spanish speakers.

4. During and furtherance of the conspiracy, Defendants, RAMIREZ and JENSEN, forced ACJ and RJ to provide household services, including but not limited to cooking and cleaning, by false inducement as to the amount of money they or their families would be paid.

5. During and furtherance of the conspiracy, Defendants, RAMIREZ and JENSEN, forced ACJ and RJ to provide commercial services, including but not limited to labor benefitting Defendant, JENSEN'S sod business, by false inducement as to the amount of money they or their families would be paid.

6. During and furtherance of the conspiracy, Defendants, RAMIREZ and JENSEN, forced ACJ and RJ to provide sexual services, including but not limited to sexual relations on nearly a daily basis, by threatening legal consequences for failing to provide said sexual services.

7. During and furtherance of the conspiracy, Defendants, RAMIREZ and JENSEN, informed ACJ and RJ they would be deported back to Mexico if they did not agree to frequent sexual relations with Defendant, JENSEN.

8. During and furtherance of the conspiracy, Defendant, JENSEN, isolated ACJ and RJ, by requiring them to stay within his residence, located in a rural area of Story County, Iowa.

9. During and furtherance of the conspiracy, Defendant, JENSEN, locked ACJ out of the residence for refusing to have sexual relations with him.

10. During and furtherance of the conspiracy, Defendant, JENSEN, mentally abused ACJ and RJ for refusing to have sexual relations with him.

11. During and furtherance of the conspiracy, Defendant, JENSEN, withheld ACJ and RJ of sufficient food and medical treatment.

## OVERT ACTS

In furtherance of the conspiracy and to effect its objectives, within the Southern District of Iowa and elsewhere, the defendants, DONALD DEAN JENSEN (hereinafter JENSEN), and ABELARDO RAMIREZ JUAREZ, also known as, Abel (hereinafter RAMIREZ), together with others, committed and caused to be committed, among others, the following:

1) On or about February of 2010, defendant, RAMIREZ, approached ACJ in Matamoros, Mexico. The defendant asked ACJ if she would be willing to marry an American man in exchange for the ability to lawfully reside in the United States.

2) On or about March of 2010, defendant, RAMIREZ, introduced ACJ to defendant, JENSEN, at a restaurant in Matamoros, Mexico. During their initial meeting, defendant, JENSEN, advised ACJ that he wanted to take her to the United States and marry her. Said conversation was translated by defendant, RAMIREZ. At no point in time during the conspiracy did defendant Jensen take any steps to marry ACJ.

3) On or about March 7, 2010, ACJ met with defendants, RAMIREZ and JENSEN, at a restaurant in Matamoros, Mexico. During said meeting, ACJ observed defendant, JENSEN, in possession of a large quantity of United States currency. After observing defendants, RAMIREZ and JENSEN, meet in private, ACJ was advised by defendant, RAMIREZ, that defendant JENSEN, paid $4,500 to defendant, RAMIREZ, to smuggle ACJ into the United States.

4) On or about March 8, 2010, defendant, RAMIREZ, drove ACJ to a residence near the border between Mexico and the United States. After arriving at the residence, ACJ was introduced to several individuals who physically assisted ACJ in crossing the border near Brownsville, Texas.

5) Immediately after crossing the border, ACJ met with defendant, RAMIREZ, at a business in Brownsville, Texas. During said meeting, defendant RAMIREZ, introduced ACJ to another individual who transported ACJ to a residence in Brownsville, Texas.

6) On or about March 9, 2010, ACJ was transported, with a group of unknown individuals, to a location in the desert. After being dropped off, ACJ and the other individuals began a long walk through a remote area of south Texas.

7) After being picked up by unknown individuals, ACJ was transported to a residence in Houston, Texas.

8) On or about March 10, 2010, unknown individuals contacted MCJ, the sister of ACJ, to arrange a location where ACJ could be picked up. Shortly thereafter, defendant, JENSEN, contacted MCJ to arrange a time and location where he could pick up ACJ from MCJ.

9) After picking up ACJ at a grocery store parking lot in Houston, Texas, MCJ transported ACJ to a nearby hotel where defendant, JENSEN, was waiting.

10) On or about March 11, 2010, defendant, JENSEN, began driving ACJ from a location in south Texas toward his residence in Iowa. On or about March 15, 2010, defendant, JENSEN, and ACJ arrived at defendant, JENSEN'S, residence located at 2***4 580th Avenue in rural Story County, Iowa.

11) Upon their arrival in Iowa, defendant, JENSEN, required ACJ to cook meals, clean his residence, wash his truck, and have frequent sexual relations with him.

12) In exchange for these services, defendant, JENSEN, promised to assist ACJ in securing legal residence in the Unites States. In addition, defendant, JENSEN, wired money to ACJ's family in Mexico. Defendant, JENSEN, wired the following funds, utilizing Western Union in Ames, Iowa, to members of ACJ's family in Mexico:

| Date | Recipient | Location | Amount |
|---|---|---|---|
| 4/3/2010 | APC | Matamoros, MX | $80 |
| 5/9/2010 | VCJ | Matamoros, MX | $200 |
| 5/27/2010 | VCJ | Matamoros, MX | $200 |
| 6/5/2010 | VCJ | Matamoros, MX | $80 |
| 6/19/2010 | VCJ | Matamoros, MX | $80 |
| 6/19/2010 | VCJ | Othon P Blanco, MX | $80 |
| 7/3/2010 | VCJ | Matamoros, MX | $80 |
| 7/16/2010 | VCJ | Matamoros, MX | $150 |
| 7/23/2010 | VCJ | Matamoros, MX | $150 |

13) On occasions when ACJ would refuse to have sexual relations, defendant JENSEN, verbally abused ACJ and threatened to return her to Mexico. On other occasions, defendant, JENSEN, locked ACJ out of the house and refused to allow ACJ re-enter until she agreed to have sexual relations with him.

14) Defendant, JENSEN, advised ACJ that she would be arrested and deported to Mexico if she were to come into contact with law enforcement.

15) As a result of the conditions forced upon ACJ by defendants, JENSEN and RAMIREZ, on or about October of 2010, ACJ fled the residence of defendant, JENSEN.

16) On or about November of 2010, defendant, RAMIREZ, spoke with RJ about a job opportunity. Defendant, RAMIREZ, explained an older American male was in need of someone to cook, clean and take care of him. Defendant, RAMIREZ, advised RJ that the older American male would send $400 per month to RJ's family in Mexico in addition to funds RJ would receive directly.

17) In late November 2010, defendant, RAMIREZ, provided RJ with bus fare to travel from Mexico City, MX to Matamoros, MX.

18) On or about November 26, 2010, RJ met with defendant, RAMIREZ, upon her arrival in Matamoros, MX. Defendant, RAMIREZ, advised RJ he would introduce her to the older American male she would be working for the following day.

19) On or about November 27, 2010, defendant, RAMIREZ, introduced RJ to defendant, JENSEN, at a restaurant in Matamoros, MX. During this meeting, defendant, JENSEN, advised RJ that he needed a housekeeper. Defendant, JENSEN, also informed RJ that he liked to engage in frequent sex. RJ informed defendant, JENSEN, that she was willing to work as a housekeeper, but would not agree to have sexual relations with defendant, JENSEN. Defendant, JENSEN, agreed to hire RJ under those conditions, then knowing full well he did not intend to keep that promise.

20) On or about November 27, 2010, defendant, RAMIREZ, drove RJ to a residence near the border between Mexico and the United States. After arriving at the residence, RJ was introduced to several individuals who physically assisted RJ in crossing the border near Brownsville, Texas.

21) Immediately after crossing the border, RJ met with defendant, RAMIREZ. Defendant, RAMIREZ, took RJ to a McDonald's restaurant in Brownsville, Texas where Defendant, JENSEN was waiting. After meeting with Defendant, Jensen, Defendant, RAMIREZ, informed RJ that she would be staying in a hotel room with Jensen. Defendant, RAMIREZ, assured RJ that Defendant, JENSEN, would not touch her.

22) After spending the night in a hotel, Defendant, JENSEN, took RJ to the Golf View Apartments in South Padre Island, Texas, where Defendant, JENSEN, and RJ stayed for approximately 20 days.

23) During their stay in South Padre Island, Texas, Defendant, JENSEN, began to pressure RJ to have sexual relations. Defendant, JENSEN, became angry when RJ refused to have sex with Defendant, JENSEN. Defendant, JENSEN, refused to purchase food or speak with RJ as a result of her unwillingness to have sex with Defendant, JENSEN.

24) During their stay in South Padre Island, Texas, Defendant, JENSEN, and Defendant, RAMIREZ, warned RJ not to run away. Both Defendant, JENSEN, and Defendant, RAMIREZ, told RJ they would find RJ if she ran away and that things would not go well for RJ's family if RJ ran away. Both Defendant, JENSEN, and Defendant, RAMIREZ, instructed RJ not to talk with anyone.

25) During their stay in South Padre Island, Texas, Defendant, JENSEN, and Defendant, RAMIREZ, told RJ she would be sent back to Mexico if she encountered the authorities. Defendant, JENSEN, often reminded RJ that she was no longer employed in Mexico. Defendant, RAMIREZ, advised RJ to "get along" with defendant, JENSEN, or risk being sent back to Mexico.

26) After approximately three to four days in South Padre Island, Texas, RJ agreed to have sex with Defendant, JENSEN. From that point forward, Defendant, JENSEN, and RJ had sex approximately three to four times per week during their stay in South Padre Island, Texas.

27) Subsequent to beginning a sexual relationship with defendant, JENSEN, RJ would often decline to have sex with Defendant, JENSEN. Defendant, JENSEN, would become angry with RJ and tell RJ he would send her back to Mexico if she refused to have sex with him.

28) During their stay in South Padre Island, Texas, Defendant, JENSEN, and RJ would meet with Defendant, RAMIREZ. Defendant, JENSEN, complained to Defendant, RAMIREZ, that RJ was not loving, that RJ would not kiss him, and that RJ never wanted to have sex with him. Defendant, RAMIREZ, told RJ not to misbehave, as Defendant, JENSEN, was a U.S. citizen who could do with her as he pleased.

29) On or about December 18, 2010, defendant, JENSEN, began driving RJ from South Padre Island, Texas toward his residence in Iowa. On or about December 20, 2010, defendant, JENSEN, and RJ arrived at defendant, JENSEN'S, residence located at 2***4 580th Avenue in rural Story County, Iowa.

30) Upon their arrival in Iowa, defendant, JENSEN, required RJ to cook meals, clean his residence, and have frequent sexual relations with him until her detention by law enforcement on October 17, 2011.

31) On occasions when RJ would refuse to have sexual relations, defendant JENSEN, threatened to contact law enforcement and have RJ deported to Mexico. Defendant, JENSEN, often reminded RJ that she no longer had a job in Mexico.

32) Defendant, JENSEN, wired money, or caused money to be wired, to RJ's family in Mexico. Defendant, JENSEN, wired the following funds, utilizing Money Gram in Ames, Iowa, to members of RJ's family in Mexico:

| Date | Recipient | Location | Amount |
| --- | --- | --- | --- |
| 12-14-2010 | JTS | Distrito Federal, MX | $100 |
| 12-24-2010 | JTC | Distrito Federal, MX | $80 |
| 01-01-2011 | JTC | Distrito Federal, MX | $400 |
| 01-30-2011 | FDS | Ecatepec, MX | $400 |
| 03-03-2011 | FDS | Ecatepec, MX | $600 |
| 03-18-2011 | IPL | Ecatepec, MX | $90 |
| 03-31-2011 | IPL | Ecatepec, MX | $500 |
| 04-30-2011 | MDS | Ecatepec, MX | $500 |
| 05-05-2011 | MHS | Mexico City | $60 |
| 05-10-2011 | MDS | Ecatepec, MX | $100 |
| 05-29-2011 | MDS | Ecatepec, MX | $500 |
| 06-18-2011 | ELR | Mexico City | $100 |

| Date | Initials | Location | Amount |
|---|---|---|---|
| 06-29-2011 | MDS | Ecatepec, MX | $450 |
| 07-14-2011 | ELR | Mexico City | $100 |
| 07-31-2011 | MDS | Ecatepec, MX | $600 |
| 08-07-2011 | MDS | Ecatepec, MX | $60 |

33) On October 17, 2011, RJ was encountered by law enforcement at Defendant, JENSEN'S residence in rural Story County, Iowa. RJ was administratively detained by law enforcement.

This is a violation of Title 18, United States Code, Sections 1590(a) and 1589(a).

**THE GRAND JURY FURTHER CHARGES:**

**COUNT TWO**
**(Alien Smuggling)**

On or about March 11, 2010, in the Southern District of Iowa, the defendants, DONALD DEAN JENSEN and ABELARDO RAMIREZ JUAREZ, also known as, Abel, knowingly and in reckless disregard of the fact that an alien, namely, ACJ, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said alien, and did not upon arrival immediately bring and present said alien to an appropriate immigration officer at a designated port of entry.

This is a violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii), and Title 18, United States Code, Section 2.

**THE GRAND JURY FURTHER CHARGES:**

**COUNT THREE**
**(Alien Smuggling)**

On or about December 18, 2010, in the Southern District of Iowa, the defendants, DONALD DEAN JENSEN and ABELARDO RAMIREZ JUAREZ, also known as, Abel, knowingly and in reckless disregard of the fact that an alien, namely, RJ, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said alien, and did not upon arrival immediately bring and present said alien to an appropriate immigration officer at a designated port of entry.

This is a violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii), and Title 18, United States Code, Section 2.

**A TRUE BILL.**

/s/
FOREPERSON

Nicholas A. Klinefeldt
United States Attorney

By: /s/ Jason T. Griess
Jason T. Griess
Assistant United States Attorney

12