UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO. 4:12-CR-085 |
| v. | ) | |
| | ) | |
| ABELARDO RAMIREZ JUAREZ, | ) | GOVERNMENT'S SENTENCING |
| also known as, Abel, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its undersigned counsel, respectfully submits the following in advance of sentencing.

## I.   Introduction

### A.   Procedural History

On June 29, 2012, a three-count Indictment was filed, charging Defendant, Abelardo Ramirez Juarez (Ramirez Juarez), with one count of conspiracy to commit forced labor and two counts of alien smuggling. Ramirez Juarez was arrested and has been in U.S. Marshals Service custody since July 9, 2012. On March 27, 2013, Ramirez Juarez pled guilty to alien smuggling as charged in Counts Two and Three of the Indictment. The Court accepted the plea and adjudicated him guilty.

### B.   Offense Conduct

On or about February of 2010, Donald Dean Jensen hired Defendant, Abelardo Ramirez Juarez (Ramirez Juarez), to locate a Mexican female willing to marry and live with him in the United States.

On or about February of 2010, Ramirez Juarez approached ACJ, an approximately 38 to 39 year old female who was a citizen and national of Mexico, in Matamoros, Mexico. The

defendant asked ACJ if she would be willing to marry an American man in exchange for the ability to lawfully reside in the United States.

On or about March of 2010, Ramirez Juarez introduced ACJ to Donald Dean Jensen, at a restaurant in Matamoros, Mexico. During their initial meeting, Donald Dean Jensen, advised ACJ that he wanted to take her to the United States and marry her. Their conversation was translated by Ramirez Juarez.

On or about March 7, 2010, Donald Dean Jensen paid Ramirez Juarez to smuggle ACJ from Mexico into the United States. Ramirez Juarez was aware ACJ had not received prior official authorization to enter the United States.

On or about March 8, 2010, Ramirez Juarez drove ACJ to a residence near the border between Mexico and the United States. After arriving at the residence, Ramirez Juarez introduced ACJ to several individuals who physically assisted ACJ in crossing the border near Brownsville, Texas. Immediately after crossing the border, ACJ met with Ramirez Juarez at a business in Brownsville, Texas. During this meeting, Ramirez Juarez introduced ACJ to another individual who transported ACJ to a residence in Brownsville, Texas.

Ramirez Juarez was aware that ACJ was not, immediately upon her arrival to the United States, brought and presented to an appropriate immigration officer at a designated port of entry.

On or about November of 2010, Donald Dean Jensen again hired Ramirez Juarez to locate a Mexican female willing to marry and live with him in the United States. Jensen agreed to pay Ramirez Juarez incrementally for assisting him in locating a Mexican woman.

On or about November of 2010, Ramirez Juarez spoke with RJ, an approximately 35 to 36 year old female who was a citizen and national of Mexico, about whether she would be willing to marry an American man in exchange for the ability to lawfully reside in the United

States. Ramirez Juarez advised RJ that the older American male would send $400 per month to RJ's family in Mexico in addition to funds RJ would receive directly. In late November 2010, Ramirez Juarez provided RJ with bus fare to travel from Mexico City, Mexico to Matamoros, Mexico.

On or about November 27, 2010, Ramirez Juarez drove RJ to a residence near the border between Mexico and the United States. Upon arrival at the residence, Ramirez Juarez introduced RJ to several individuals who physically assisted RJ in crossing the border near Brownsville, Texas. Immediately after crossing the border, RJ met with Ramirez Juarez. Ramirez Juarez took RJ to a McDonald's restaurant in Brownsville, Texas where Donald Dean Jensen was waiting.

Ramirez Juarez was aware that RJ was not, immediately upon her arrival to the United States, brought and presented to an appropriate immigration officer at a designated port of entry.

    **C.**    **Advisory Guideline Computation**

The Presentence Report calculates Defendant's total offense level as 10, and a criminal history category of I, for a guideline calculation of 6 to 12 months. The Government and Defendant are in agreement as to the guideline range. The only issue to be determined at sentencing is the appropriate sentence for Defendant.

**III.**    **ARGUMENT**

Title 18, United States Code, Section 3553(a) directs the Court to consider the following factors in determining the particular sentence to be imposed:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)     to afford adequate deterrence to criminal conduct;

      (C)     to protect the public from further crimes of the defendant; and

      (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for [. . .] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .] issued by the Sentencing Commission[;]

(5)     any pertinent policy statement [. . .] issued by the Sentencing Commission[;]

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a). The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" above. *Id.*

Based upon the nature and circumstances of this case, the defendant's criminal history, and the other factors listed in 18 U.S.C. § 3553(a), the United States recommends Ramirez Juarez receive a sentence of time already served. This will amount to a sentence of approximately one year in custody. There is no restitution in this case.

## IV. CONCLUSION

For the reasons stated above, the United States respectfully asks the Court to impose a sentence of time already served.

> Respectfully Submitted,
>
> Nicholas A. Klinefeldt
> United States Attorney
>
> By: */s/ Jason T. Griess*
> Jason T. Griess
> Assistant United States Attorney
>
> U. S. Courthouse Annex, Suite 286
> 110 East Court Avenue
> Des Moines, Iowa 50309
> Tel: (515) 473-9300
> Fax: (515) 473-9292

CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2013, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

____U.S. Mail  _____ Fax  _____Hand Delivery

 X   ECF/Electronic filing    ____Other means

UNITED STATES ATTORNEY

By: */s/ Dawn Thomas*
     Paralegal Specialist